J-A13018-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JEFFDYN RUSHTON | : | |
| | : | |
| Appellant | : | No. 83 WDA 2025 |

Appeal from the Judgment of Sentence Entered October 3, 2024
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0004214-2024

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JEFFDYN RUSHTON | : | |
| | : | |
| Appellant | : | No. 84 WDA 2025 |

Appeal from the Judgment of Sentence Entered October 3, 2024
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0006342-2022

BEFORE: BOWES, J., OLSON, J., and BENDER, P.J.E.

MEMORANDUM BY OLSON, J.: **FILED: August 7, 2026**

Appellant, Jeffdyn Rushton, appeals from the judgment of sentence entered on October 3, 2024, following his jury trial convictions for third-degree murder, attempted homicide, aggravated assault, carrying a firearm without a license, and persons not to possess a firearm.[1] Upon review, we affirm.

---

[1] 18 Pa.C.S.A. §§ 2502(c), 2501/901(a), 2702(a), 6106, and 6105, respectively.

We briefly summarize the facts and procedural history of this case as follows. On June 26, 2022, the police responded to a call from Allegheny General Hospital (AGH) stating that two men had arrived by private vehicle, each with gunshot wounds. One of the men eventually died from his injuries at AGH; the other would not tell the police what transpired. After a subsequent police investigation, it was determined that the gunshot victims were involved in a high-speed car chase throughout the streets of downtown Pittsburgh and across the 16th Street Bridge, following an altercation with Appellant at Art's Tavern on Penn Avenue in Pittsburgh, Pennsylvania. Important to this appeal,

> [t]he jury saw video evidence from inside the bar of the fight involving Appellant [and the two victims]. Security broke up the fight and detained [the victims] while Appellant was escorted off the premises. The jury also viewed exterior video [footage] showing Appellant in a blue Equinox [vehicle] driving past the bar shortly after he was escorted out. [The video showed a black] Lexus [SUV, with one of the victims] in the driver's seat, drive away pursued at a high rate of speed by Appellant driving the Equinox. Both cars ran several [red] lights. Ultimately, [] traffic camera video [showed] the Lexus driving onto the 16th Street Bridge and the Equinox speeding up to catch [] the Lexus on the bridge. Appellant was alone in the Equinox when it entered the bridge. The video [did] not show any other vehicles enter the bridge at the time and it [did] not show those two vehicles exiting the bridge on the other end. The Lexus travel[ed] straight in the direction of AGH while the Equinox travel[led] in [another] direction not captured in the video.
>
> *     *     *
>
> Walter Collier testified that he works as a forensic services manager at SoundThinking, Incorporated, formerly ShotSpotter, Incorporated. He was qualified without objection as an expert in the review, analysis, and documentation of ShotSpotter incident data. He explained that ShotSpotter [sound technology] is

deployed in a coverage area to determine the presence and location of suspected gunfire within a region. He prepared a detailed forensic report in which ShotSpotter data was used to determine that gunshots were fired at 12:10:11 a.m. on June 26, 2022, at 1618 Waterfront Place[, a location near the 16th Street Bridge]. The time and location [were] consistent with the time and location on the video showing the Lexus and Equinox entering and exiting the bridge. Eight shots were recorded within 1.977 seconds at consistent intervals, which, Collier testified, suggest[ed] that the shots were fired from a single gun. Based on the time elapsed for the shots and the spread of the gunshots, Collier opined that the shooter had to have fired from a moving vehicle. Collier estimated that the shooter was travelling 29 miles per hour in a northwest direction.

Trial Court Opinion, 7/8/2025, at 5-6 (record citations omitted).

Moreover, at trial, the Commonwealth presented the autopsy report and testimony of a forensic pathologist who opined that the decedent victim had two gunshot wounds to his head "consistent with a shooter inside [another] moving vehicle approaching the Lexus from the right rear" and that the manner of death was homicide. *Id.* at 6 (citation omitted). The police testified that they collected ballistic evidence from the victims' Lexus showing two bullet holes "consistent with two shots fired, one from right to left and another from behind" as well as "two bullet fragments [found] inside the [Lexus]" and "two shell casings detectives recovered on the [16th] Street B]ridge." *Id.* at 5 (citations omitted). However, "[n]o firearm was recovered." *Id.* at 4 (citations omitted).

On July 27, 2024, a jury found Appellant guilty of the aforementioned crimes. On October 3, 2024, the trial court sentenced Appellant to an

J-A13018-26

aggregate sentence of 20 to 40 years of imprisonment. This timely appeal

resulted.[2]

On appeal, Appellant presents the following issues for our review:

I.    Whether the evidence was insufficient to convict [Appellant]
      of [carrying a firearm] without a license, where the
      Commonwealth failed to prove, beyond a reasonable doubt,
      that the item was a firearm?[3]

---

[2]   Counsel for Appellant filed a timely post-sentence motion on October 15,
2024, because the tenth day to file a post-sentence motion fell on Columbus
Day, Monday, October 14, 2024. **See** 1 Pa.C.S.A. § 1908 (excluding
weekends and holidays from computation of the filing period). The 120-day
period for a decision on the post-sentence motion expired on February 12,
2025. **See** Pa.R.Crim.P. 720(B)(3)(a). However, an order denying the post-
sentence motion by operation of law was not entered until seven days later,
or on February 19, 2025. In the interim, trial counsel was permitted to
withdrawal, but the trial court appointed the Public Defender's Office to
represent Appellant. Appellant, however, filed a premature *pro se* notice of
appeal on January 23, 2025, which we deem as timely. **See** Pa.R.A.P.
905(a)(5) ("A notice of appeal filed after the announcement of a determination
but before the entry of an appealable order shall be treated as filed **after such
entry** and on the day thereof.") (emphasis added); **see also** Pa.R.A.P.
108(a)(1) ("[T]he date of entry of an order by a court or other government
unit… shall be the day the clerk of the court or the office of the government
unit mails or delivers copies of the order to the parties, or if such delivery is
not otherwise required by law, the day the clerk or office of the government
unit makes such copies public."); **see also Commonwealth v. Munro**, 262
A.3d 483 (Pa. Super. 2021) (non-precedential decision) (deeming an
appellant's premature notice of appeal as filed on the date of the entry of an
order denying a post-sentence motion by operation of law). On May 29, 2025,
after the trial court granted several requested extensions of time, counsel for
Appellant filed a concise statement of errors complained of on appeal pursuant
to Pa.R.A.P. 1925(b). The trial court issued an opinion pursuant to Pa.R.A.P.
1925(a) on July 8, 2025.

[3]   The Commonwealth contends that Appellant waived this issue for failing to
include the video evidence presented at trial within the record certified for
appeal, thereby hampering our appellate review. **See** Commonwealth's Brief
*(Footnote Continued Next Page)*

- 4 -

II.     Whether the evidence was insufficient to convict [Appellant] of third-degree murder, [attempted] criminal homicide, aggravated assault, [carrying a firearm] without a license, and person[s] not to possess [a] firearm[,] where the Commonwealth failed to prove beyond a reasonable doubt that [Appellant] was the shooter?

III.    Whether the trial court abused its discretion in denying [Appellant's] post-sentence motion for a new trial … where the weight of the evidence was against [a] finding [that Appellant] was the shooter?

Appellant's Brief at 7 (unnecessary capitalization omitted).

Appellant's first two issues challenge the sufficiency of the evidence presented at trial and we will examine them together.  In his first issue, Appellant argues that there was insufficient evidence to convict him of carrying a firearm without a license under Section 6106.[4]  More specifically, Appellant

_____

at 14-15 ("The Commonwealth objects to the apparent omission and respectfully submits that [the video] exhibit's absence completely prevents appellate review of [Appellant's] claims and that this Court may find [A]ppellant's claims to be waived.").  However, on May 21, 2026, Appellant and the Commonwealth subsequently stipulated to supplementing the certified record on appeal, pursuant to Pa.R.A.P. 1926(b)(2), by filing the "merged video labeled at trial as Commonwealth Exhibit 1F" with this Court's Prothonotary.  As such, there is no impediment to our review, and we decline to find waiver.

[4]  **§ 6106. Firearms not to be carried without a license**

**(a) Offense defined.--**

(1) Except as provided in paragraph (2), any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

*(Footnote Continued Next Page)*

asserts that the firearm used during the shooting was never recovered or entered into evidence at trial and "there was absolutely no evidence presented regarding the firearm's barrel or overall length." *Id.* at 24; *see also id.* at 25 ("The fact that [the victims] were shot is not circumstantial evidence of the barrel or overall length of the device that shot them. Because the Commonwealth failed to prove the barrel length or overall length of the object, the conviction for [f]irearms [n]ot to be [c]arried [w]ithout a [l]icense must be vacated.").

In his second issue presented, Appellant claims that the Commonwealth "failed to prove that [Appellant] was the shooter [and,] therefore, the evidence was insufficient to convict [Appellant] of any of the charges." *Id.* at 26. Appellant suggests that the video evidence presented at trial showed he was on the 16th Street Bridge at the same time as the victims, but he argues "there were no muzzle flashes on the video" showing shots fired from his vehicle, "[t]he video shows a third vehicle on the bridge[,] the only

_____

18 Pa.C.S.A. § 6106(a)(1). For purposes of Section 6101(a)(1),

A "firearm" is defined as:

Any pistol or revolver with a barrel length less than 15 inches, any shotgun with a barrel length less than 18 inches or any rifle with a barrel length less than 16 inches, or any pistol, revolver, rifle or shotgun with an overall length of less than 26 inches. The barrel length of a firearm shall be determined by measuring from the muzzle of the barrel to the face of the closed action, bolt or cylinder, whichever is applicable.

18 Pa.C.S.A. § 6102.

evidence indicating a shooting took place on the bridge [were] sensors detecting impulsive sound similar to gunshots" as recorded by ShotSpotter,[5] and the ballistics evidence "concluded that the closeness of the [decedent's] wounds meant both [the victim] and the shooter had minimal movement" and [Appellant] could not have fired a firearm with minimal movement while simultaneously driving his vehicle." *Id.* at 26-27. Accordingly, Appellant argues that "[u]ltimately, the evidence showed that either someone else must have been the shooter or, at the very least, [Appellant] was one of multiple, equally-likely suspects on the 16th Street Bridge." *Id.* at 29.

This Court has previously determined:

---

[5] Our Supreme Court recently decided a case implicating ShotSpotter technology in **Commonwealth v. Foster**, 356 A.3d 747 (Pa. 2026) wherein the Court granted discretionary review to determine "[w]hether the Superior Court erred in affording too much weight to [Foster's] temporal and spatial proximity to a ShotSpotter alert in assessing whether reasonable suspicion existed to support" an investigative detention by police. **Foster**, 356 A.3d at 755. Therein, Foster argued that ShotSpotter was unreliable, "limited by its audio-only nature, as it provides no information related to potential suspects" and suggested that police should "treat ShotSpotter as an anonymous tip" subject to reasonable suspicion. *Id.* at 756 ("*Amici* agree[d] ShotSpotter [was] a faulty method for detecting gunfire. Ultimately, our Supreme Court did not rule on whether ShotSpotter technology, by itself, was sufficiently reliable to establish reasonable suspicion and, instead, determined that "the totality of the circumstances — the late-night ShotSpotter alerts indicating gunfire in a residential neighborhood, the rapid police response, the sole presence of [Foster] and [a passenger in his vehicle] at the scene, and the pair's furtive and evasive behaviors upon the arrival of the police — amounted to reasonable suspicion particular to [Foster]." *Id.* at 764. However, as the dissent in **Foster** authored by Justice Donohue recognized, "the [**Foster**] Majority [did] little if anything to aid the bench and bar in resolving further cases involving ShotSpotter." *Id.* at 766 (Donohue, dissenting).

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [this] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*　　　　*　　　　*

Our precedent confirms that proof that a particular weapon meets the barrel length definitions [set forth in Section 6102 (**see** n.4, above)] is an essential element of § 6106[, carrying a firearm without a license].

*　　　　*　　　　*

[I]t is well-established that the Commonwealth may establish the length of a particular weapon by purely circumstantial evidence in this context. ***See Commonwealth v. Rozplochi***, 561 A.2d 25, 31 (Pa. Super. 1989) (concluding that there was sufficient evidence to establish the length of a firearm's barrel from testimony and estimations of size provided by an eyewitness, irrespective of whether the gun was entered into evidence); ***Commonwealth v. Jennings***, 427 A.2d 231, 235 (Pa. Super. 1981) (holding jury is permitted to "infer" the length of a weapon by first-hand observation).

***Commonwealth v. Vallery***, 293 A.3d 644, at *2 (Pa. Super. 2023)

(non-precedential decision) (original brackets and some citations omitted).

"[A]dditional circumstantial inferences [may] provide support for the

conclusion that [an a]ppellant possessed a firearm with a barrel length less than fifteen inches" when the Commonwealth presents evidence that the shooter "was able to hold and discharge the at-issue firearm with one hand" or where there is "no of-record evidence suggest[ing] that the barrel of [the] weapon was exceptionally long" which then permits the fact-finder to infer the "barrel length [meets] the definition set forth in Section 6102." *Id.* at *3, *citing* **Commonwealth v. King**, 251 A.3d 1266 (Pa. Super. 2021) (non-precedential decision) (holding testimony "[King] was holding the firearm with one hand seemingly waving it around, coupled with [the] characterization of the firearm as a 'pistol,' and absent any evidence of an exceptionally long barrel length," permitted the factfinder to infer that the "firearm's barrel length met the definition set forth in Section 6102").

Finally, this Court has also determined that possession of a firearm may be established purely on circumstantial evidence because

> once the factfinder conclude[s] that the appellant was the slayer and that the death resulted from the infliction of a gunshot wound, the factfinder could logically have concluded from all of the evidence that the appellant had possession of a gun, that the gun was an instrument commonly used for criminal purposes, and that his possession of the gun was, under the circumstances, not manifestly appropriate for any lawful use that the gun may have had.

**Commonwealth v. Grant**, 2019 WL 5538284, at *5–6 (Pa. Super. 2019) (non-precedential decision), *citing* **Commonwealth v. Woodbury**, 477 A.2d 890, at 893-894 (Pa. Super. 1984).

In this case, the trial court "addressed [Appellant's first two issues as presented herein] in reverse order for administrative convenience," opining:

> In summary, the evidence established that [the decedent] died from two gunshot wounds to the head. The [victims'] Lexus had two bullet holes consistent with shots fired from outside the vehicle from the rear and the right of the Lexus. Immediately prior to the shooting, [the victims] engaged in a bar fight that involved Appellant. [As verified by security at Art's Tavern,] Appellant, in his Equinox, chased after [the victims] in their Lexus from the bar's parking lot onto the 16th Street Bridge. ShotSpotter evidence place[d] the shooter on the bridge between the time that the Equinox driven by Appellant can be seen entering and exiting the bridge. ShotSpotter evidence also indicate[d] that the shots were fired from a single gun that was in a moving vehicle. Video evidence also show[ed] that the Lexus exited the bridge and arrived moments later at AGH with a passenger who had been shot in the head from the rear and right side. The pre-bridge video does not show damage to the Lexus windshield. Based on the totality of the evidence, the jury did not err in finding that Appellant was the shooter who killed the [decedent victim].
>
> Having determined that Appellant was the shooter, the jury was free to conclude that the item used to kill [the decedent victim] must have been a firearm. The bullet sized holes in [the decedent victim] and in the [Lexus] which transported him to the hospital, as well as the ShotSpotter evidence, shell fragments and shell casings, sufficiently establish[ed] that Appellant possessed a firearm.

Trial Court Opinion, 7/8/2025, at 7-8 (record citation omitted).

Upon review, we agree with the trial court's assessment that sufficient evidence supported Appellant's convictions because the Commonwealth proved he was the shooter and that he possessed a firearm within the meaning of Section 6101(a)(1). The Commonwealth proved beyond a reasonable

doubt that Appellant shot the victims.[6]  After Appellant was ejected from Art's Tavern for physically fighting with the victims, a security guard subsequently witnessed Appellant, waiting outside for them in his blue, Equinox vehicle. The jury saw video evidence of Appellant's vehicle engaged in a high-speed car chase throughout the City of Pittsburgh, driving alone behind the victims. Physical evidence, both ballistics evidence and ShotSpotter sound technology, confirmed that gunshots were fired on the 16th Street Bridge, into the victims' vehicle, striking the decedent victim from behind and to his right, at precisely the same time both Appellant's car and the vehicle in which the victims traveled drove across the bridge.  Video surveillance showed the victims' car veer off towards AGH and hospital staff telephoned the police soon thereafter confirming a shooting.  Based upon the evidence before it and our standard of review, we agree with the trial court's conclusion that the jury had sufficient evidence to conclude that Appellant was the shooter.

We also agree that sufficient evidence showed beyond a reasonable doubt that Appellant was in possession of a firearm within the meaning of Section 6101(a)(1).  The evidence revealed that Appellant was alone and, therefore, was shooting while driving. As such, he was able to hold and discharge the at-issue firearm with one hand.  ***See Vallery***, 293 A.3d at *2

---

[6] To the extent Appellant suggests the evidence was insufficient to show he possessed a firearm, we reject his suggestion as the evidence supported an inference that Appellant had possession of a gun.  This Court has previously determined that possession of a firearm may be established by purely circumstantial evidence.  ***See Grant*** *citing* ***Woodbury***, ***supra***.

(one-handed operation of firearm permits inference that barrel length meets definition Section 6102). Further, there was no record evidence suggesting that the barrel of the weapon used in the shooting was exceptionally long. Accordingly, the jury was free to infer the barrel length met the definition of a firearm as set forth in Section 6102. For all of the foregoing reasons, we conclude that the Commonwealth presented sufficient evidence to support all of Appellant's convictions and, thus, Appellant's first two issues lack merit.

Finally, Appellant claims that even if "the evidence was sufficient, the verdicts still go against the weight of the evidence because the ShotSpotter evidence was weak and flawed, [Appellant] could not fire the firearm and drive at the same time, and there remains the possibility of a third person being the shooter." Appellant's Brief at 31.

Our review of a claim that the evidence was against the weight of the evidence presented at trial is well-established:

> When reviewing a challenge to the weight of the evidence, we review the trial court's exercise of discretion. A trial court may sustain a weight challenge only if the verdict is so contrary to the evidence as to shock one's sense of justice. The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of the witnesses.
>
> We defer to the trial court's decision regarding a weight of the evidence claim because it had the opportunity to hear and see the evidence presented.
>
> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings

- 12 -

and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

***Commonwealth v. Garcia Arce***, 352 A.3d 495, 508–509 (Pa. Super. 2026) (internal citations omitted).

In this case, the trial court determined:

The evidence in this case supported the guilty verdict. No miscarriage of justice occurred here. Rather, the jury correctly reviewed the evidence and determined that Appellant shot and killed [the decedent victim]. Considering the totality of the circumstances, [the trial court's] sense of justice [was] not shocked, as the evidence strongly support[ed] Appellant's conviction[s].

Trial Court Opinion, 7/8/2025, at 8.

Here, Appellant's weight claim asks us to reassess the persuasive value of the evidence and the credibility of the witnesses presented at trial. As an appellate court, we may not undertake such a reevaluation. The jury heard the evidence, and it is the sole province of the jury to determine its weight and persuasive value. We may not substitute our judgment for the jury or trial court's findings. Moreover, the evidence was not so tenuous, vague and uncertain that the verdict shocked the conscience of the court. Accordingly, Appellant's weight of the evidence claim fails. As such, Appellant's final issue is without merit.

Judgment of sentence affirmed.

- 13 -

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

8/7/2026